# IN THE COURT OF APPEALS OF IOWA

No. 20-0224
Filed April 15, 2020

**IN THE INTEREST OF J.S.,**
**Minor Child,**

**L.S., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Dubuque County, Thomas J. Straka, Associate Juvenile Judge.

A father appeals the juvenile court decision terminating his parental rights. **AFFIRMED.**

Dustin Baker of Henkels and Baker, PC, Dubuque, for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Kathryn A. Duccini of Duccini Law Office, PLLC, Dubuque, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., and Mullins and Schumacher, JJ.

**SCHUMACHER, Judge.**

A father appeals the juvenile court decision terminating his parental rights. We find there is clear and convincing evidence in the record to support termination of the father's parental rights. The father waived his claim concerning reasonable efforts by not raising it before the juvenile court. We conclude termination of the father's rights is in the child's best interests. Accordingly, we affirm the decision of the juvenile court.

### I.       Background Facts & Proceedings

L.S., father, and J.C., mother, are the parents of J.S., born in 2017. The father was incarcerated in Wisconsin at the time of the child's birth on charges of possession of methamphetamine and burglary tools, and he remained incarcerated during most of the child's life. The child was removed from the parents' care on April 19, 2018, due to the mother's use of methamphetamine. The child was placed with a maternal aunt. Hair tests for both the child and the mother were positive for methamphetamine.

The child was adjudicated to be in need of assistance on May 24, pursuant to Iowa Code section 232.2(6)(c)(2), (n), (o), and (p) (2018). The mother made progress in addressing her problems with substance abuse and the child was returned to her care in December. The mother relapsed and the child was removed again on April 15, 2019. The child was placed with suitable other persons, M.K. and L.K., who have expressed an interest in adopting the child.

The father was released to a residential correctional facility in Iowa on November 26. He immediately contacted the Iowa Department of Human Services (DHS). He began interactions with the child in December, as well as Family Safety,

Risk, and Permanency Services. The father obtained a job while at the residential facility. It was unknown how long he would be at the residential facility. He expected to be discharged from parole in 2023.

On December 5, the State filed a petition seeking termination of the parents' rights. After a hearing in January 2020, the juvenile court terminated the parents' rights under section 232.116(1)(h) (2019).[1] At the time of the termination hearing, J.S. was twenty-eight months old and had been out of parental custody for seventeen months. The juvenile court noted the child could not be returned to the father's care at the time of the hearing because the father was residing at a residential correctional facility, where children were not allowed. The court denied the father's request for an extension of time, stating it was unable to find that the need for removal would not exist after six months. The court determined termination of the father's parental rights was in the child's best interests. The court did not apply any of the exceptions found in section 232.116(3). The father now appeals.

II.      **Standard of Review**

Our review of termination proceedings is de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). The State must prove its allegations for termination by clear and convincing evidence. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). "'Clear and convincing evidence' means there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.* Our primary

---

[1] The mother did not appeal the termination of her parental rights.

concern is the best interests of the children. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014).

### III.     Discussion

**A.**     The father claims there is not sufficient evidence in the record to support termination of his parental rights under section 232.116(1)(h). Section 232.116(1)(h) provides for termination of parental rights when the following elements have occurred:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

There is sufficient evidence in the record to support each of these elements. The child was less than three years of age, the child was adjudicated to be in need of assistance, and the child was removed from the parents' care for over eight months from the time of the second removal in April 2019 to the time of the termination hearing in January 2020. Also, there is clear and convincing evidence in the record to show the child could not be returned to the father's care. The father was living in a residential correctional facility that did not permit children to live there with their parents. The juvenile court properly determined there were grounds for termination of the father's rights under section 232.116(1)(h).

**B.** The father asserts the State did not engage in reasonable efforts to reunite him with his child. He contends he should have been given visitation with the child while he was incarcerated.

"The State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent." *In re L.M.*, 904 N.W.2d 835, 839 (Iowa 2017) (quoting *C.B.*, 611 N.W.2d at 493). Although DHS must make reasonable efforts towards reunification, "parents have a responsibility to object when they claim the nature or extent of services is inadequate." *Id.* at 839–40. "In general, if a parent fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding." *Id.* at 840 (quoting *In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002)).

In a permanency order dated January 30, 2019, the juvenile court stated, "Father indicated he was in agreement with the Department's recommendations as they pertain to him and was not requesting any additional services." Additionally, the issue of reasonable efforts as to the father was not raised at the termination hearing. The record does not show the father requested any additional services, including visitation.[2] We conclude he waived this issue and we do not further address it. *See id.*

**C.** The father claims termination of his parental rights is not in the child's best interests. He states he might be released from the residential correctional facility soon and could then assume the care of the child. He asserts he engaged

---

[2] The father began interactions with the child in December 2019 following his transfer to a residential treatment facility.

in meaningful interaction with the child after he was released from prison in November 2019.

"When we consider whether parental rights should be terminated, we 'shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child.'" *In re M.W.*, 876 N.W.2d 212, 224 (Iowa 2016) (quoting Iowa Code § 232.116(2)). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010).

The father did not know when he would be released from the residential correctional facility. Even after he was released, he would need to obtain stable housing and show a period of stability before the child could be placed in his care. Furthermore, he would need to show he could maintain sobriety outside an institutional setting. The juvenile court stated:

> [F]ather was not able to set forth a reliable timeframe as to when he will be able to establish his own housing and reach the level necessary in order to even begin interactions with the child. Thereafter, father would need to exhibit a substantial length of time of compliance with case plan expectations and sobriety.

We agree with this finding of the juvenile court. We conclude it is not in the child's best interests to wait for the father to achieve the level of stability that would be necessary for the father to parent the child, and we affirm the juvenile court's decision terminating the father's parental rights.

**AFFIRMED.**

Mullins, J., concurs; Tabor, P.J., concurs specially.

**TABOR, Presiding Judge** (concurring specially).

I agree with the outcome reached by the majority but write separately to raise a concern about the lack of visitation offered to the father while he was incarcerated in Wisconsin. It does not appear that the Iowa Department of Human Services (DHS) made any real effort to assess the feasibility of regular supervised visits between J.S. and his father. The DHS worker testified at the termination trial that a relative placement did take J.S. to visit his father at the correctional facility in Prairie du Chien in 2018. But the DHS worker was unable to provide any information about how those visits were conducted.

The family safety, risk, and permanency (FSRP) worker did not start supervised visitation between J.S. and the father until he was paroled in late November 2019. Those visits went well and the father was faithful in his attendance. Not establishing consistent contact between J.S. and his father earlier was a lost opportunity.

For two decades we have required the DHS to follow its statutory mandate to provide reunification services even when a parent is incarcerated. *See In re S.J.*, 620 N.W.2d 522, 525 (Iowa Ct. App. 2000) (directing DHS to consider whether visitation is reasonable based on these factors: child's age, bonding with parent, clinical recommendations concerning visitation, nature of parenting deficiencies, physical location of child and parent, limitations of place of confinement, services available in prison, nature of offense, and length of parent's sentence). Yet nothing in this record suggests the DHS staff performed that evaluation. Had the DHS considered the relevant factors, it appears visitation may have been feasible. For instance, distance was not a great impediment. As

the father notes in his petition on appeal, Prairie du Chien was only forty miles from Dubuque. In addition, a family member had arranged visits between J.S. and the father at the prison, suggesting the setting and the interactions were appropriate.

Parental incarceration has a devastating impact on the children left behind. *See* Amy B. Cyphert, *Prisoners of Fate: The Challenges of Creating Change for Children of Incarcerated Parents*, 77 Md. L. Rev. 385, 386 (2018) (citing Annie E. Casey Found., *A Shared Sentence: The Devastating Toll of Parental Incarceration on Kids, Families and Communities* 1–7 (2016), http://www.aecf.org/m/resourcedoc/aecf-asharedsentence-2016.pdf). In Iowa, parents' attorneys must ensure their incarcerated clients voice their desire to have visitation, if appropriate. *See In re L.M.*, 904 N.W.2d 835, 840 n.9 (2017) ("Whether visitation for an incarcerated parent should be ordered as a reasonable effort toward reunification when timely raised by the parent will depend on the circumstances of each case."). Resources are available to help attorneys navigate the issues facing incarcerated parents. *See* https://www.drake.edu/law/clinics-centers/middleton/ipp/https://www.drake.edu/law/clinics-centers/middleton/ipp/ (last visited Apr. 9, 2020). In this case, I agree with the majority that the father did not preserve his reasonable-efforts argument.

At the same time, I would emphasize the DHS and FSRP workers must not operate on the assumption that incarcerated parents cannot be allowed visitation. The DHS should follow its statutory mandate and the guidance from *S.J.* to assess the feasibility of regular supervised visits between incarcerated parents and their children.